IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY GIRALDES,   No. CIV S-06-2277-MCE-CMK-P

    Plaintiff,

  vs.   FINDINGS AND RECOMMENDATIONS

ROCHE, et al.,

    Defendants.

_____/

       Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court are:  (1) defendants' motion for summary judgment (Docs. 26 and 27); and (2) plaintiff's cross-motion for summary judgment (Docs.41 and 46).  Defendants have filed objections (Doc. 54) to the evidence submitted by plaintiff in support of his cross-motion.

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

A. **Plaintiff's Allegations**

Plaintiff names the following as defendants: Drs. Roche and James. Plaintiff claims that he suffers from "gastroesophageal reflux disease" and "dumping syndrome," both of which he states are serious medical conditions. Plaintiff alleges that, even though defendants knew of his medical conditions, they refused to provide treatment. Plaintiff claims:

> Specifically, Dr. Roche, Chief Medical Officer at [High Desert State Prison] told plaintiff he "does not appreciate" litigators, after plaintiff filed a 1983 suit against [California Medical Facility] doctors and custody staff . . . .

Plaintiff asserts that defendant Roche filed declarations on behalf of defendants in this other § 1983 case.

Plaintiff also claims that facilities at High Desert State Prison are inadequate to meet his medical needs but that, nonetheless, defendant Roche has instructed that no transfer requests are to be considered. In particular, plaintiff states that defendant James was told by defendant Roche:

> No doctor at [High Desert State Prison] will be the one to put a nail in [California Medical Facility's] coffin. You will get a transfer when your issues with them are resolved.

Plaintiff alleges defendant James is liable because, despite his knowledge of plaintiff's conditions, he did not provide medical treatment. Finally, plaintiff claims that "the denial of proper placement is a deliberate and intentional effort to 'cover' for the defendants in plaintiff's other suit, and not due to a medical rationale." Plaintiff seeks monetary damages and various forms of equitable relief.

In a recent filing, plaintiff characterized his claims as follows:

> . . . [The case] is legally more complicated than a simple "failure to treat" claim, in that it requires an assessment of the adequacy of the treatment given by defendants.

Plaintiff also claims that he was denied medical treatment as retaliation.

B. **Undisputed Facts**

Plaintiff arrived at High Desert State Prison with the following medical conditions: (1) gastroesophageal disease ("GERD"); (2) dumping syndrome; and (3) knee problems. GERD refers to the backflow of acid into the canal leading to the stomach, and is a chronic disease with symptoms that can be treated but which cannot be cured. Dumping syndrome, or rapid gastric emptying, occurs when the lower end of the small intestine fills too quickly and can result in nausea, vomiting, bloating, diarrhea, and shortness of breath. As with GERD, dumping syndrome cannot be cured, but it can be treated. Symptoms for both problems can persist even with proper treatment.

Both Drs. Roche and James provided medical treatment to plaintiff while he was housed at High Desert State Prison. Specifically, defendants state that "[w]hen medically necessary, the treatment consisted of double meal portions, medication to reduce his stomach acid, pain medication such as Tylenol, nutritional supplement drinks, and a leg brace for his knee." In addition, defendants state that plaintiff was referred to outside specialists for treatment when necessary. Dr. Roche admits that, on at least one occasion, the prison ran out of the supplement drinks and, as a result, plaintiff went for a brief period of time without it. As to plaintiff's knee problem, defendants state that, in their professional opinions, surgery was not medically indicated. Plaintiff was prescribed a soft knee brace. A metal knee brace was not appropriate because it would have inhibited leg movement and caused weakened leg muscles.

As to alleged retaliation, Dr. Roche admits that he knew that plaintiff had filed numerous appeals concerning his medical treatment and indicates that he knew that plaintiff had filed a lawsuit challenging his transfer from the California Medical Facility to High Desert State Prison. Both defendants, however, have submitted declarations in which they state that they never denied plaintiff medically necessary treatment. Dr. James in particular states in his declaration that his decision not to recommend a transfer was not motivated by plaintiff's litigation.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. <u>See</u> Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. <u>See Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>See Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>See Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

/ / /

/ / /

/ / /

### III.  DISCUSSION

Plaintiff claims that he was denied adequate medical care  and that such denial was in retaliation for his having filed a lawsuit challenging his transfer from the California Medical Facility.  Defendants argue they are entitled to summary judgment because the undisputed facts demonstrate that plaintiff cannot prevail on his claims, and because they are entitled to qualified immunity.

**A.    Medical Care**

The treatment a prisoner receives in prison and the conditions under which the prisoner are confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In this case, defendants have presented evidence demonstrating that they provided plaintiff with all medically necessary treatment and care.  To the extent plaintiff asserts that defendants' determination of what treatment was medically necessary was wrong, such a claim would constitute a difference in opinion regarding treatment and cannot form the basis for liability under § 1983.  See id.  Plaintiff has not offered any evidence to establish that defendants failed to provide any medical care, nor can he given that he admits that he was, in fact, provided some treatment.  Specifically, plaintiff testified at his deposition that he received medical care from defendants.  He simply did not receive the treatment he thought he should have received.

/ / /

**B.     Retaliation**

Prisoners retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). In order to prevail on a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must submit evidence establishing a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also establish that his constitutional right was actually chilled by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000). Thus, the prisoner plaintiff must establish the following in order to prevail on a claim of retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action actually chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). It is the prisoner's burden to establish that there were no legitimate penological purposes motivating the actions of which he complains. See Pratt, 65 F.3d at 808. Finally, retaliation claims are evaluated in light of the deference generally accorded prison officials. See id. at 807.

Here, plaintiff cannot establish that defendants took adverse action against plaintiff. In fact, as discussed above, defendants provided plaintiff with the treatment they determined was medically necessary. Thus, no "adverse" action was taken. Moreover, defendants state in their declarations that their medical decisions were in no way influenced by plaintiff having filed a lawsuit.

///

### C. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even

if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

For the reasons discussed above, the court concludes that the evidence does not establish that defendants violated any of plaintiff's constitutional rights. Therefore, they are entitled to qualified immunity.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Docs. 26 and 27) be granted;

2. All other pending motions, requests, and objections be denied as moot; and

3. The Clerk of the Court be directed to enter judgment in favor of defendants and against plaintiff and to close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's

///

Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 27, 2007

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE